JUNE, 1856.—IN EQUITY.

B. F. HARDY vs. E. S. RUGGLES et als.    On Bill of Exceptions.

Chattel mortgages are included in the law relating to the registry of conveyances, Vol. 1 Statute Laws, p. 248, sec. 8, under the term, " pledges of chattel property." (Translated in the Hawaiian version, na palapala hoolilo waiwai lewa.)

Where there occurs a radical and irreconcilable difference between the English and Hawaiian versions of a statute, the latter must govern. (See Metcalf vs. Kahai, January Term, 1856.)

Mortgages of personal, as well as real, property, are required to be stamped and recorded.          ▸ ●

CHIEF JUSTICE LEE delivered the opinion of the court.

This is a bill of exceptions taken to the decision of JUDGE ROBERTSON, as follows :

" And Barnum W. Field one of the defendants in the above entitled cause, excepts to the decision of his Hon. G. M ROBERTSON, that the record of the mortgage from Asa G. Thurston and Eli S. Ruggles to Benjamin F. Hardy, is notice of the same to the said defendant, on the ground that there is no statute of this kingdom requiring chattel mortgages to be recorded, and he further excepts to the said decision on the ground that the court has ruled, that the said defendant must show that the property he purchased of the said Ruggles & Thurston is not the property covered by the mortgage of the said Hardy, on the ground that he was not privy to the mortgage and cannot be supposed to know what property if any was covered by the said mortgage, and the persons taking the mortgage and granting the same are the only persons that can know what portion of the stock in trade of the said Ruggles & Thurston was to be affected by the said mortgage when it was executed or since, and that the mortgagor or person

holding under him, should not be placed in a worse position, than they would be was the complainant foreclosing his mortgage.

(Signed,)                    ASHER B. BATES,
                             Solicitor for B. W. Field."

"And the said defendant Warren Goodale excepts as above.

(Signed,)                    JNO. MONTGOMERY,
                             Solicitor for W. Goodale."

" I hereby allow the within exceptions, as being correct.

(Signed,)                    G. M. ROBERTSON,
                             26th April, 1856."

1st. It is contended by the learned counsel for the defendants, that there is no statute of this kingdom requiring chattel mortgages to be recorded, and therefore, that the decision of the judge that the record of such a mortgage in this case is constructive notice to the defendants of its existence and contents, is erroneous.

This point raises the question, what is the proper construction to be given to the eighth section of the act relating to the registry of conveyances, which section is in the following words :

" Section VIII. All bills of sale or pledges of chattel property, all contracts and agreements, all articles of marriage settlement and powers of attorney or other instruments affecting the transactions of private individuals, the terms of which are not to be performed within one year, shall first be duly acknowledged and then recorded with the registrar as hereinbefore provided, within thirty days after the execution thereof, in default of which no such instrument shall be binding to the detriment of third parties, or conclusive upon their rights and interests."

It is argued on the part of the defendants that the word " pledges" used in the above section, does not include mortgages of chattel property, because a mortgage is not a pledge. In other words, that the term *pledge* must be confined to its strict technical meaning, which is a bailment or delivery of goods by a debtor to his creditor, to be kept till the debt be discharged. That it was not used in the limited sense contended for, by the framer of the act, Mr. Ricord, or by the Legislature, is very evident from the use made of the word in other portions of this and other acts. In the very section preceding the one under consideration, they speak of " mortgages or other pledge," and in the 2nd section they speak of " conveyances and *pledges of real property*," and in the 13th section it is said, " all conveyances and pledges of real and personal property executed anterior to the passage of this act, shall be recorded at the instance and expense of the grantee or *mortgagee*"—not grantee and *pledgee*—showing, most conclusively, that the framers of the statute used the word *pledge* in its general sense, as including mortgages and other securities for debt. To say that the Legislature intended to restrict the meaning of the word pledges in this section to the technical definition of a delivery or bailment of goods by a debtor to his creditor, to be kept till the debt be discharged, would be absurd ; for what sense would there be in requiring such pledges to be acknowledged and recorded ? Again, let us examine the assertion of the learned counsel that a mortgage is not a pledge, and so totally distinct as not to be included under that term. A mortgage, literally speaking, is a dead pledge, the word being derived from two French words, *mort*, dead, and *gage*,

pledge. In old English law a mortgage is defined to be " a dead or unproductive pledge; a pledge of moveables or immoveables by one person to another, as a security for a debt." 2 Burrill's Law Dictionary, Mortgage. In modern law it is " the conveyance of an estate, by way of pledge for the security of a debt, and to become void on payment of it." 4 Kent Comm., 133; 2 Burrill's Law Dictionary, Mortgage. " A conveyance of lands, chattels or other subjects of property as security for a debt upon a condition." 2 Bl. Comm 157.

Mr. Hilliard in his learned treatise on mortgages, after saying that various definitions have been given of a mortgage by different judges and elementary writers, some of which cannot be considered as precisely accurate, although presenting a correct general view of the subject, gives the most correct definition of a mortgage to be " The conveyance of an estate by way of pledge for the security of debt, and to become void on payment of it, or, a conditional conveyance of land, designed as security for the payment of money or performance of some other act, and to be void on such payment or performance. Or an absolute pledge to become an absolute interest, if not redeemed at a certain time." He goes on to say that, " All property, real or personal, corporeal or incorporeal, moveable or immoveable, may be the subject of mortgage." 1 Hilliard on Mortgages, 2, 4. It is obvious from the slightest examination of the ancient and modern writers on the law of mortgages, that a mortgage is and always has been considered a kind of pledge, in the common and general acceptation of that term, and this is undoubtedly the sense in which it was used by the framers of this statute. A mortgage, so long as the right of redemption continues, is only personal estate. " Both in law and equity, the mortgagee has only a chattel interest. In *common sense*, he has only a *pledge*. He is not the *substantial* owner." 1 Hilliard on Mortgages, p. 163. We would not urge for a moment that there is not a clear and plain distinction between a pledge and a mortgage, in a technical sense of those terms, but simply that the word pledge was used by the author of the English version of the statute in the common and more general sense.

2d. It is argued that even though the English version of the 8th section of the Registry Act may require the recording of chattel mortgages, still it is not required by the Hawaiian version, and that in case of collision between the Hawaiian and English, the Hawaiian must prevail. The section in Hawaiian reads as follows :

"Pauku 8. O na palapala kuai a pau, a me na palapala hoolilo waiwai lewa, a me na palapala hoolimalima, a me na palapala ae like, a me na palapala mare, a me na palapala hoolilo hope, a me na palapala e ae i pili i na hana a kanaka no ka manawa i oi aku mamua o ka makahiki hookahi, e pau ia mau palapala i ke kakaukope ia ma ka hale o ka mea kakau kope, e ae mua ia nae imua o kona alo. A i ole hanaia pela kekahi palapala, maloko o na la he kanakolu mahope iho o ke kakau ana, alaila, aole e paa ia palapala ma ke ano e poino ai kekahi kanaka e aku, a lilo kana waiwai paha."

It is said the words *na palapala hoolilo*, which in the Hawaiian take the place of " pledges" in the English, cannot be construed to mean mortgages, but mean *absolute sales, transfers or conveyances*. In other words, that *na palapala hoolilo* can never include any conditional transfer or conveyance. In our opinion the proper translation of the

GG

section is, all bills of sale and conveyances of personal property, &c., &c. The reason why we think so is, that the word conveyance or conveyances is translated by the words *palapala hoolilo* five times in the act under consideration, and has been so translated in all subsequent statutes. This act was passed in 1846; and in the statutes of 1847, the word was thus translated. In the statutes of 1848, *palapala hoolilo* is used to signify " conveyance or transfer;" and in the act relating to the recording of conveyances, passed in 1852, " conveyance" and " conveyances" are repeatedly translated by the words *palapala hoolilo.* and such is and has been, we believe, the invariable custom.

The words " lilo" and " hoolilo," as stated by JUDGE ANDREWS, are very broad and indefinite in their meaning, having no corresponding word in the English language, but, on the contrary, as being capable of answering to a hundred different words in the English language; and I have observed from a very superficial examination of our statutes, that his remark is true. They are found within the limits of a few pages to be used for the words transfer, conveyance, cession and confirmation, and include within their general meaning all manner of conveyances, conditional as well as unconditional. I have examined our statutes with some care to see if I could find the words absolute sale, conveyance or transfer, for the purpose of ascertaining how they were translated in Hawaiian, and I have found where the sale or conveyance is absolute, the words used are *lilo loa, lilo loa maoli ana, hoolilo loa, lilo mau loa,* and the like. See Stat. Laws, vol. 1, pp. 99, 100. It is not clear to us that the words " na palapala hoolilo" do not well answer to the term " pledges," used in its general sense, and that the translation is not a good one; but, granting all that the counsel for the defendants contend for, viz: that the words " na palapala hoolilo" mean transfers or conveyances, it does not alter the case. Can it be contended for a moment that the words transfers or conveyances do not include mortgages, and must be confined to absolute and unconditional conveyances ? We think not ; for such a construction is opposed to reason, and would do violence to both the English and Hawaiian languages.

But, say the learned counsel for the defendants, if we are to read " na palapala hoolilo waiwai lewa" as meaning, all conveyances of chattels or personal property, this general language will include all bills of sale, as well as mortgages, and hence we should be required to record every bill of goods we might purchase. Such a construction would lead to an absurdity, and ought of course to be rejected ; but our answer is, that a portion of the statute which requires bills of sale of personal property to be recorded, has been expressly repealed, and consequently the words " na palapala hoolilo," cannot apply to such documents.

We now come to the final point in relation to the registry, which is, that the registrar of conveyances is not authorized to record any instrument not required to be stamped by statute, and that the stamp act does not require the stamping of chattel mortgages, therefore, the registry of the mortgage in this case cannot be notice of its existence or contents. The English version of the stamp act does require all mortgages to be stamped, but it is said the Hawaiian does not, and that the latter should prevail. The parties in this suit all acknowl-

edge the English to be their mother tongue, and it is contended that in equity they should be held subject to the laws as they read in English. This is not without weight; but where there is a radical and irreconcilable difference between the English and Hawaiian, the latter must govern, because it is the language of the legislators of the country. This doctrine was first laid down by the Superior Court in 1848, and has been steadily adhered to ever since. The English and Hawaiian may often be used to help and explain each other where the meaning is obscure, or the contradiction slight, but in a case like the present, where the omission in the Hawaiian is clear, it is impossible to reconcile them ; and if we were to be governed solely by the law generally known as the Stamp Act, as found on the 20th and 21st pages Vol. 1 of the Statutes in Hawaiian, we should think this point of the defendants well founded. But in deciding this question we are to take into view other acts in *pari materia*, relating to the same subject, and compare them, because they are considered as having the same object in view, and as acting upon one system. We are to ascertain and carry into effect the intention of the law makers; and it is to be inferred that a code of statutes relating to one subject was governed by one spirit and policy, and was intended to be consistent and harmonious in its several parts and provisions. " It is an established rule in the exposition of statutes that the intention of the law giver is to be deduced from a view of the whole, and every part of a statute, taken and compared together." 1 Kent's Comm., 461, 3.

Now, by comparing the Stamp Act on page 24, vol. 1, Stat. Laws, with the Registry Act, which will be found on page 246 of the same code, we see that it was clearly the understanding of the Legislature that they had included chattel mortgages in the list of instruments to be stamped, and rendered it necessary for them to be recorded, else why do they provide that the registrar of conveyances shall keep the record of conveyances and pledges of real property distinct from those of personal property ? If this was not their understanding and intention, why do they say that it shall not be lawful to record any conveyance unless it shall have been previously stamped, and almost in the same breath require that all " pledges of chattel property," and " all conveyances of real and personal property, made and executed anterior to the passage of this act, and all pledges of property real or personal, executed anterior to the passage of this act, the conditions of which have not been fulfilled when this act is promulgated, shall be recorded in the office of the registrar of conveyances, at the instance and expense of the grantee or mortgagee" ? (1 Vol. Stat. Laws, pp. 246-7-8.) No one, we think, can fairly read this registry law, without discovering that it was the plain intention of the Legislature that mortgages of personal as well as of real property should be stamped and recorded; and that intention clearly discovered must control the clerical omission made in the stamp act.

This brings us to the final exception, namely, that the judge erred in ruling that the defendants Field and Goodale must show that the property they purchased from Ruggles & Thurston is not the property of Hardy, on the ground that Field and Goodale were not privy to the mortgage and cannot be supposed to know what property if any, was covered by it; and that the mortgagors and mortgagee are the

only persons who can know what portion of the stock in trade of Ruggles and Thurston, is old stock and covered by the mortgage.

There can be no doubt that as a general rule a mortgagee claiming property as against a purchaser from, or creditor of, the mortgagor must identify the property as being covered by his mortgage ; but this, like most other rules, has its exceptions, and there may be such circumstances in the case as to shift the "onus" from his to other shoulders. Hardy sold Ruggles and Thurston his stock of drugs, &c., for a certain sum, to secure the payment of which he took a general mortgage on the goods sold, and all in-coming stock, and subsequently Ruggles and Thurston assigned the balance of their stock on hand, composed of old and new, to Field and Goodale to pay certain debts. We have decided that so far as the new stock is concerned, Hardy's claim is not good, and it now becomes necessary to separate the old from the new, and the question arises, upon whom does this duty devolve ? The court below has decided that it rests upon Field and Goodale, the holders of the goods, and we think that, under the peculiar circumstances of the case, the decision is right. The mortgagors, Ruggles and Thurston, have mixed up the mortgagee's goods with other drugs, so that it may be very difficult for him to recognize them, while it ought to be an easy task for Ruggles and Thurston to do so ; and the question arises upon whom does the "onus" rest, to call them in for this purpose ? We think it rests upon Field and Goodale, for these conveyances show Ruggles and Thurston to be friendly to them, and at the same time hostile to Hardy. The whole transaction on the part of Ruggles and Thurston wears the appearance of bad faith, and the purchasers who claim a portion of the goods as new stock, must show what portion are new.

The exceptions are over-ruled.

Mr. Bates, Mr. Montgomery, and Mr. Harris, in support of the bill. Mr. Ducorron and Mr. Griswold, contra.

NOTE.—See Shillaber *vs.* Waldo *et als.*, page 21, as to construction of statutes.